## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TREVAR MORRIS, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 09-694 |
| | ) Judge Terrence F. McVerry/ |
| v. | ) Magistrate Judge Cathy Bissoon |
| | ) |
| SGT. SCHOMPERT; CO THOMAS | ) |
| CO HALFHILL; CO SHIEVE; | ) |
| CO COLLINS; CO PENNELTEN | ) |
| | ) |
| Defendants. | ) |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

In this civil rights action brought pursuant to 42 U.S.C. § 1983, Plaintiff, Trevar Morris ("Morris" or "Plaintiff"), acting pro se and having been granted in forma pauperis status, alleges that officers at SCI-Fayette used excessive force against him in violation of his Eighth Amendment rights. He alleges, too, that prison officials violated his Fourteenth Amendment rights when they removed and destroyed property from his cell, and failed to accord him due process during grievance proceedings stemming from the alleged incidents. Plaintiff also asserts a number of conspiracy and retaliation claims. The Court now considers Defendants' Motion for Summary Judgment [ECF No. 25] and Plaintiff's Motion for Appointment of Counsel [ECF No. 29]. Having carefully reviewed the law and the record, the Court respectfully recommends that the Motion for Summary Judgment be granted, and that the Motion for Appointment of Counsel be denied as moot.

## II. REPORT

### A. Summary of Relevant Allegations

The Court turns first to the alleged infringement of Morris's Fourteenth Amendment property rights. Morris contends that in March 2008, distraught over the death of his father, he asked to be moved to an observation cell so that he could "talk to someone." [ECF No. 6 at 6]. He alleges that on May 19, 2008, while he was out of his customary cell, Sergeant Schompert ("Schompert") ordered Corrections Officer Thomas ("Thomas"), to clean it. Morris alleges that in the cleaning process, items of his personal property were destroyed or lost. He filed a timely grievance, which was denied because he was unable to name the officers who had tampered with his possessions or to identify the items that were allegedly mishandled. [ECF No. 30-7 at 10].[1]

In the initial response to Morris's grievance, the investigating officer wrote that Plaintiff had been placed in an observation cell due to his irrational behavior. When Morris asked to retrieve property left behind, he was escorted to his to his customary cell, where he tried to take tobacco. When Officer Dongelli ("Dongelli") would not let him do so, he became unruly, "trashing" his cell. [ECF No. 28-1 at 86]. Addressing Morris's final administrative appeal, the chief grievance officer wrote:

> You have failed to provide sufficient evidence that staff
> is responsible for your alleged missing property. Lt. Johnson
> conducted an investigation into your allegations [and] found that
> they could not be substantiated. The record reflects that you
> destroyed your own property while in a rage . . . [T]he officers
> salvaged as much [of] your property as possible and placed it

---

[1] Morris contends that he has signed "request slips" from other officers contradicting the official version of events, and that those handling his grievance told conflicting stories about why he was moved, who had access to his "old cell," and what happened to his property. Morris also contends that he has a property log inventorying the items in his cell prior to his transfer. None of these documents were included in the record. [ECF No. 30-1 at 3]. He maintains that other officers with knowledge of the circumstance surrounding his cell search should have been interviewed. [ECF No. 28-1 at 84-85].

in the record boxes. Therefore, the property that was not
damaged was returned to you.

[Id. at 82].

Morris next contends that his Eighth Amendment rights were violated when he was assaulted on May 27, 2008.[2] He states that "while [he was] coming in from the yard in handcuffs . . . two corrections officers pinned [him] up against a fence and told him not to move. [A]t that point [Schompert] came up to [Morris] and started beating [his] hands into the cuffs until they started to bleed." [ECF No. 6 at 6]. The record shows that prior to this interaction, an inmate in the RHU yard had thrown urine from a carton onto another inmate. [ECF No. 28-1 at 27]. In order to prevent escalation of a problematic situation, the staff evacuated the yard. "Morris, who was 2 pens away from the incident, was cuffed and removed from his pen for escort to his cell by Corrections Officers, Burton and DiSilvestro." [Doc 28-1 at 40]. On the way back to his cell, Morris "charged at Sgt. Schompert." [Id.] When the escorting officers could not successfully subdue Morris, Schompert "applied a goose neck on the inmate's wrist to get

---

[2] Although Morris's Complaint alleges two other incidents of excessive force that allegedly occurred in 2007, the Court does not address them, because the individuals alleged to have inflicted that force, Corrections Officers, Poska and Richter are not named as Defendants, nor have they been served. This is a problem that recurs throughout the Amended Complaint. Although Plaintiff names multiple other prison officials in describing alleged violations of his constitutional rights, they, too, are not named as Defendants, and Morris has not effected service. In addition to Poska and Richter, this list of individuals includes prison officials, Armel, Zaken, Crumb, Reposky, Manchas, Cross, Leggett, Abrams, Johnson, Hooper, Coleman, House, Kushner, Watson, Dongelli, Zembroskey, Roger, Galorza, Lawrence, Albright, Watson, DiSilvestro, Burton, and Wiles. Because the Court lacks personal jurisdiction over these officials, the allegations made against them are irrelevant for purposes of summary judgment. See Brown v. Collingswood Police Dept., Civil No. 09-2879, 2011 WL 1205544 at *2 (D. N.J. March 29, 2011) ( clarifying that in case of invalid service, the court lacks personal jurisdiction over defendants). Fish Net, Inc. v. Ocean County Reef Aquatics, Civil Action No. 09-5259, 2010 WL 393067 at * 2 (E.D. Pa. Jan. 26, 2010). "Proper service is . . . a prerequisite to personal jurisdiction." Pars Tekstil Sanayi Tic, A.S. v. Dynasty Designs, Inc., Civ. No. 08-1147, 2008 WL 3559607, at *1 (E.D.Pa. Aug.13, 2008) (citing Grand Entmn't Grp., Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 492 (3d Cir .1993)).

3

leverage." [Id. at 31]. Morris was then taken to the strip cage with no further incident. [Id.]. He was given a tray, and assessed by medical personnel who noted a small laceration on his right wrist with no active bleeding. [Id. at 37]. Morris was then returned to his cell. [Id. at 30].

According to the Extraordinary Occurrence Report, the events described were captured by three different cameras. [Id. Ex. B (disk attached)]. According to Superintendent Coleman, "The video very clearly shows the inmate lunging towards the sergeant and further shows that staff used the least amount of force necessary to bring [Morris] under control and escort him to the L-Unit strip cage." [Id. at 27; ECF No. 28-1 Ex. F (disk attached)].

The next incident described in Morris's Complaint took place on May 29, 2008 when Officer Halfhill ("Halfhill") confronted Morris "with a picture of a necket [sic] transsexual," while making inappropriate comments about Morris liking this kind of material. [ECF No. 6 at 6]. Halfhill then put the picture inside Morris's cell door. According to Morris, when he asked to see the Lieutenant to complain, his water was turned off. [Id.].

Later that evening, when Morris's food slot was opened so that he could receive fresh linen, he contends that he placed his arm in the slot to keep it from closing, so that he could tell the Lieutenant what Halfhill had done. [Id. at 7]. "That's when Officers Halfhill, Shieve, Collins, and Pennelten started bending, twisting, and hitting [his] arms and using the food slot door to crush [his] arm." [Id.]. Each officer's incident report states that Morris stuck his arm as far out of the slot as he could, and attempted to grab Officer Shieve. Shieve and Halfhill struggled with Morris in an effort to force him to withdraw his arm, but were unable to do so. Although Officers Collins and Wiles arrived to assist, Morris would not retract his arm. The officers then withdrew. [ECF No. 28-1 at 53-59]. Lieutenant McCombie was called to the cell, and ordered Morris to "cuff up." [Id. at 52]. Morris complied, and was escorted to the unit strip

4

cage without incident. He was then examined by a nurse who noted a scratch on Morris's left hand near his wrist, a small laceration and abrasion on his left thumb, and lacerations on his left upper arm. She described Morris's complaints of stiffness in his left index finger and middle fingers. The affected areas were cleaned with soap and water, and bandages were applied. The nurse recorded Morris's explanation of his injuries as follows: "When linens were exchanged [he] held [the] pie slot hostage and wanted to see [the] Lieutenant because of earlier events of the day. When they tried to close [the] slot [they] twisted [his] arm and hand." [Id. at 70].

### B. Legal Standard

Summary Judgment is appropriate only where there are no genuine issues of material fact. Matsushita Elec. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). An issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). While the moving party must demonstrate the absence of any genuine factual dispute, Celotex Corp. v. Catrett, 477 U.S. 317, 323(1986), the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Matsushita, 475 U.S. at 586-87 (1986) (emphasis in original removed).

In evaluating the evidence, the Court must view the facts and the inferences to be drawn therefrom in a light most favorable to the non-moving party. Anderson, 477 U.S. at 255. At the summary judgment stage, the Court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. See Anderson, 477 U.S. at 249. When examining the record to see if there are genuine issues of material fact, the Court's focus is on issue finding, not on issue resolution.

### C. Analysis

### 1. Plaintiff's Eighth Amendment Claims

a. Use of Physical Force

The Eighth Amendment prohibits the "unnecessary and wanton infliction of pain." Whitley v. Albers, 475 U.S. 312, 319 (1986); Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 259 (3d Cir.2010). In assessing a convicted inmate's excessive force claims, the Court must determine "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Wilkins v. Gaddy, ––U.S. ––––, 130 S.Ct. 1175, 1178 (2010) (per curiam) (quoting Hudson v. McMillian, 503 U.S. 1, 7 (1992)). "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by" the Eighth Amendment; "[t]he infliction of pain in the course of a prison security measure, therefore, does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense." Whitley, 475 U.S. at 319. When addressing a claim that a correctional officer has used excessive force, the Court examines: "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response." Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000) (internal citations, quotations omitted).

Two incidents allegedly involving the use of excessive force are at issue. The May 27 incident in the prison yard was captured from multiple angles on the institution's video camera,

6

and the recordings are included in the record. [ECF No. 28-1 at 21 (disk attached)]. Having closely reviewed these recordings, the Court finds that force exerted in this instance "was applied in a good-faith effort to maintain or restore discipline," and not "maliciously and sadistically to cause harm." Hudson, 503 U.S. at 7. The video establishes incontrovertibly that when Morris was cuffed and being taken from the yard, he turned suddenly and lunged in the direction of Schompert. Morris was immediately secured by his two handlers, and pushed face first against one of the cage fences. Schompert applied a gooseneck compliance hold to his wrist. [Id. at 31]. After the hold was applied, Morris was subdued, and walked to a strip cell without incident. Nothing in the video supplied to the Court suggests that the response to Morris's charge was disproportionate to the threat posed by his behavior. No violence is visible, and Morris does not appear to be in significant distress. The injury to his wrist was minor and did not require medical treatment. [Id. at 37].

The Court finds that no reasonable juror could conclude that Schompert acted maliciously in a deliberate attempt to cause harm to Morris. Instead, it is clear that Schompert made a good faith effort to protect himself and to restore order in a situation that could have devolved to endanger other officers or inmates. Certainly, Schompert's conduct did not come close to violating "contemporary standards of decency." Velez v. Pittman, Civil Action No. 09-1418, 2010 WL 2516513 at *2 (D. N.J. June 14, 2010) (quoting Hudson, 503 U.S. at 7). The Court recommends, therefore, that Schompert's Motion for Summary Judgment be granted as to this excessive force claim.

Morris contends that he was again the victim of excessive force again on May 29, 2008. This claim has its genesis in Morris's assertion that earlier in the day, Halfhill taunted him with a pornographic picture. Morris acknowledges that this upset him, and that he asked to speak with

7

the Lieutenant. He claims that following his request, the water to his cell was turned off.[3] [ECF No. 6 at 6]. Later the same day, Shieve, Pennelten, and Halfhill were passing clean linen and jumpsuits to the inmates through the food slots. When Shieve approached Morris's cell, Morris stuck his arm through the slot. Shieve ordered him to remove it. Morris refused and reached for Shieve. [ECF No. 28-1 at 49, 53]. Shieve took hold of Morris's arm to try to force it back into the cell. [Id. at 53]. Halfhill came to Shieve's assistance as did Officers Collins and Wiles. The officers were unable to secure the food slot, and ultimately withdrew. [Id. at 55]. Halfhill "reported to Sgt. Ruvo that we had a pie slot taken hostage . . . and were not able to secure it." [Id.]. When Captain McCombie arrived at the cell, he directed Morris to cuff up in order to undergo medical evaluation. That evaluation was completed, and no significant injuries were found. [Id. at 70]. Morris was then strip searched and taken to a cell with a secure food slot. [Id. at 51].

As was the case with the May 27 use of force, the Court finds that the record evidence regarding events on May 29 is insufficient to establish an Eighth Amendment claim. Even if the Court were to assume, arguendo, that the officers overreacted to Morris's failure to pull his arm back and to the danger posed by his reaching outside the cell, Morris has not established that the officers acted sadistically, with malicious intent to injure him. The fact that they withdrew when they were unable to accomplish their goal and the minor extent of Morris's injuries support this conclusion. Because the physical contact between Defendants and Plaintiff did not rise to the level of a constitutional violation, Defendants are entitled to summary judgment on this Eighth Amendment claim.

---

[3] The investigation of this incident revealed that Morris, seeking to speak with the Lieutenant, called the officer in the control bubble and threatened to flood his cell. [ECF No. 28-1 at 76]. In response to this threat, water to the cell was temporarily turned off.

Verbal Abuse

Morris contends that Halfhill engaged in unconstitutional verbal harassment when he taunted Morris with a picture of a naked transsexual. The case law makes clear that verbal harassment without injury or damage does not state a claim under section 1983. See Regelman v. Rustin, Civil Action No. 10-849, 2011 WL 1899779 at * 7 (W.D. Pa. May 19, 2011) (collecting cases). "Verbal abuse of a prisoner, even of the lewd variety, is not actionable." Robinson v. Danberg, 729 F. Supp.2d 666, 679-80 (D. Del. 2010) (collecting cases). No matter, then, how reprehensible Halfhill's conduct may have been, "such conduct if as alleged, is not violative of rights secured to the Plaintiff under the Constitution or the laws of the United States." Id. at *8.

**2. The Fourteenth Amendment Claims**

a. Interference with Property Rights

Morris next alleges that his Fourteenth Amendment rights were violated on March 18, 2008, when photographs, legal material, a dictionary, a phone book, letters, and other personal items were taken from his cell and destroyed or lost. The only Defendant named in connection with this claim is Thomas, who is alleged to have cleaned Morris's cell at Schompert's request. Morris lacks a constitutional claim associated with the loss or destruction of his property. To the extent that Morris failed to recover his property due to Thomas's negligence, his claim fails. See Daniels v. Williams, 474 U.S. 327, 328 (1986) ("[T]he Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property.").

Even if it could be demonstrated that Morris was intentionally deprived of his property, his claim would still be deficient. There can be no due process violation associated with the loss

of property where a meaningful post-deprivation remedy is available. Hudson, 468 U.S. at 533. The Court of Appeals for the Third Circuit has held that a prison's grievance program and internal review process provide a post-deprivation remedy sufficient to satisfy due process. Tillman v. Lebanon County Corr. Facility, 221 F.3d 410, 42 (3d Cir. 2000). "Pennsylvania provides such a remedy." Tapp v. Proto, 718 F. Supp. 2d 598, 624 (E.D. Pa. 2010). See Payton v. Horn, 49 F.Supp.2d 791, 795 (E.D.Pa.1999), overruled on other grounds, Ray v. Kertes, 285 F.3d 287 (3d Cir.2002) (holding that because Pennsylvania tort law offers a remedy for prison officials' unlawful deprivation of inmate property, inmate failed to state a constitutional claim). See also Reid v. Seville, No. CIV. A. 96-2577, 1996 WL 421901 at *3 (E.D. Pa. July 19, 1996) (same); Austin v. Lehman, 893 F.Supp. 448, 454 (E.D.Pa.1995) (finding that both inmate grievance procedure and state tort law action constituted adequate post-deprivation remedies); Rogers v. Brown, Civil No. 95-7867, 1996 WL 608473 at *2 (E.D. Pa. Oct. 24,1996) (same)

      b. Conspiracy to Destroy Property

According to Morris, Schompert and Thomas engaged in a conspiracy to violate his constitutional rights when they acted in concert to confiscate and destroy his property. In order to establish a claim for conspiracy under section 1983, "a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right under color of state law. "Parkway Garage, Inc. v. Philadelphia, 5 F.3d 685, 700 (3d Cir. 1993) abrogation on other grounds recognized in Kamco Indus. Sales, Inc. v. Lovejoy, Inc., __F. Supp.2d __, 2011 WL 891825 at *8 (E.D. Pa. March 10, 2011). As the Court has explained, Defendants' treatment of Morris's property did not constitute a constitutional violation. Thus, Morris's conspiracy claim fails.

c. <u>Violation of Due Process - Improper Disciplinary Proceedings</u>

In his Amended Complaint, Morris alleges that his grievances were not resolved fairly or in accordance with the facts. He complains, too, that he did not receive copies of at least one appeal. Though inmates "have a constitutional right to seek redress of grievances as part of their right of access to courts, this right is not compromised by the failure of prison officials to address these grievances." <u>Dickens v. Taylor</u>, 464 F. Supp. 2d 341, 352-53 (D. Del. 2006) (citing <u>Booth v. King</u>, 346 F.Supp.2d 751, 761 (E.D.Pa. 2004)). Because prisoners do not have a constitutional right to an effective prison grievance procedure, an official's failure to process or accurately process an administrative grievance is not actionable under section 1983. <u>Burnside v. Moser</u>, No. 4-4713, 2005 WL 1532429 at *1 (3d Cir. June 30, 2005) (citing <u>Flick v. Alba</u>, 932 F.2d 728, 729 (8th Cir.1991)).

d. <u>Fabricated Misconduct Charges</u>

Morris contends that Defendants Schompert, Halfhill, Shieve, Collins, and Pennelten fabricated misconduct charges against him. [ECF No. 6 at 6]. "The filing of a false disciplinary charge and related disciplinary sanctions, without more, does not violate the Plaintiff's rights under the Due Process Clause." <u>Robinson v. Danberg</u>, 729 F.Supp.2d 666, 678 (D. Del. 2010), (citing <u>Smith v. Mensinger,</u> 293 F.3d 641, 653-54 (3d Cir. 2002). A constitutional deprivation of a protected liberty interest occurs only when the prison "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." <u>Id.</u> (quoting <u>Sandin v. Connor</u>, 515 U.S. 472, 484 (1995). Here, as was the case in <u>Robinson,</u> it is impossible to tell from Plaintiff's submissions what punishment, if any, he received as a result of the allegedly bogus write-ups, and thus, whether that punishment implicated a protected liberty interest. As a

result, Morris's claim based on fabricated misconduct cannot survive the Defendants' Motion for Summary Judgment.

### 3. Retaliation Claims in Violation of Eighth and Fourteenth Amendments

In order to survive summary judgment on a retaliation claim, a prisoner-plaintiff must establish that: (1) the conduct underlying the allegation of retaliation was constitutionally protected; (2) the inmate "suffered some 'adverse action' at the hands of prison officials"; and (3) his constitutionally protected conduct was a "substantial motivating factor in the action taken against him." Royster v. Beard, No. 08-3353, 2009 WL 146689 at *2 (3d Cir. Jan. 22, 2009) (quoting Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001)). Morris makes the conclusory allegation that Thomas and Schompert retaliated against him in removing property from his cell, and does not provide specifics about his own protected conduct. He also fails to point to any connection between his participation in protected conduct and the treatment of his property.

Morris next contends that Schompert's use of excessive force in applying handcuffs to Plaintiff in the yard was in retaliation for Morris's having filed prior grievances against him. Even assuming that Morris has satisfied the first two elements of a retaliation claim, the record is devoid of evidence showing that prior grievances were a substantial motivating factor in Shompert's use of handcuffs. As the Court has already explained, the video evidence regarding the cuffing in question shows that Schompert acted in self-defense and in an attempt to keep a potentially volatile situation from escalating.

Last, Morris asks the Court to find that he has adduced evidence demonstrating that Halfhill, Shieve, Collins, and Pennelten acted to remove his arm from the food slot in retaliation for his prior filing of grievances alleging the use of excessive force. There is no evidence that Morris filed prior grievances against any of these individuals. Again, Morris fails to establish

the causation element of his prima facie case. Moreover, Morris does not deny that he extended his arm from the food slot in order to force the Lieutenant to talk with him about Halfhill's taunting, or that he reached for Shieve. Simply put, evidence surrounding this incident does not even hint that these Defendants acted in response to Morris's alleged prior protected conduct.

### III.     CONCLUSION

For the reasons set forth above, the Court finds that Plaintiff has failed to point to evidence showing that any of the Defendants named and served in this matter transgressed his constitutional rights. Therefore, the Court recommends that Defendants' Motion for Summary Judgment [ECF No. 25] be granted in its entirety. The Court further recommends that the pending Motion for Appointment of Counsel [ECF 29 No. 29] be denied as moot

In accordance with the Magistrate's Act, 28 U.S.C. § 636 (b)(1)(B) and (C), and Rule 72.D.2 of the Local Rules for Magistrates, objections to this Report and Recommendation must be filed by September 27, 2011. Failure to file timely objections will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

Respectfully submitted,

/s/ CATHY BISSOON
Cathy Bissoon
United States Magistrate Judge

Dated:   September 13, 2011

cc:      Counsel of Record via CM-ECF


　　　Trevar Morris
　　　EK-7203
　　　SCI Lau
　　　P.O. Box 631
　　　5706 Glades Pike
　　　Somerset, PA  15501